**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **MASON ST. CLAIR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-01096** |
| | ) | **Judge Aleta A. Trauger** |
| **ARDAGH METAL PACKAGING USA CORP. and KEURIG MANUFACTURING, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM**

Plaintiff Mason St. Clair alleges that he was injured by an exploding soda can that the defendants manufactured. Defendant Keurig Manufacturing, Inc. ("Keurig") has filed a Motion to Dismiss (Doc. No. 16). Defendant Ardagh Metal Packaging USA Corp. ("Ardagh") has filed a Motion for Judgment on the Pleadings (Doc. No. 20). For the reasons set forth herein, both Motions will be denied.

## I. FACTS

On October 2, 2024, Mason St. Clair[1] ("Mason") and his mother, non-party Karren St. Clair ("Karren"),[2] stopped in Nashville while on a road trip they began in late September. (Doc. No. 1, Compl. ¶¶ 4–7.) Once inside their hotel room, they transferred beverages from a cooler to their room's mini refrigerator (the "mini-fridge"). (*Id.* ¶¶ 8–9.) The next day, Karren retrieved a bottle of water from the mini-fridge, noticed that it was beginning to freeze, and suggested that

---

[1] Mason is not a minor (Doc. No. 1 at 1).

[2] For ease of reference, the court will uncharacteristically refer to the plaintiff and his mother by their first names, as the plaintiff does throughout the Complaint.

they remove all of the beverages. (*Id.* ¶¶ 11–12.) Mason took a can of Schweppes ginger ale which "felt like the contents had frozen," from the mini-fridge and placed it in the cooler. (*Id.* ¶ 13.) Immediately thereafter, the "top of the can exploded off striking Mason in the right eye," which "blinded Mason's right eye vision, was very painful[,] and required emergency medical treatment." (*Id.* ¶¶ 14, 16–17.) The incident caused Mason "macular atrophy, optic nerve atrophy, distortion due to retinal damage, and permanent vision impairment." (*Id.* ¶ 49.)

Mason alleges that Ardagh "designed, manufactured[,] and produced" the can and that Keurig bought the can, filled it with carbonated soda, and applied the top of the can, which it separately sourced. (*Id.* ¶¶ 19, 29–30; *see id.* ¶ 26 ("[T]ops of the aluminum soda can[s] are separately produced and sent to the suppliers using the cans for liquid drinks.").) He further alleges that, during the canning process, after a can is filled with liquid, the "top is stamped onto each aluminum can and fixed with a double seam," which a "scanner should inspect . . . for proper sealing." (*Id* ¶¶ 30–32.) As relevant here, the product had three constituent parts: the can—designed, manufactured, and produced by Ardagh; the liquid soda poured into the can by Keurig; and the top of the can, which Keurig procured from a non-party and then affixed to the can with a double seam. Mason alleges that his injuries were "the fault of Ardagh and Keurig Manufacturing, Inc. in producing and manufacturing a soda can with a defective double seam," that the can of ginger ale was "defective when it left the possession and control of" the defendants, and that he would not have been injured if the "soda can at issue had a double seam properly attached." (*Id.* ¶¶ 45–47.) Broadly, Mason alleges that the soda can should not have exploded when he took it out of the mini-fridge. (*Id.* ¶¶ 36–47.) The Complaint does not clarify whether the flaw in the double seam was due to a defect with the top, the can, or the manner in which the can was "fixed with [the] double seam." (*Id.* ¶ 31.)

## II. PROCEDURAL HISTORY

In his Complaint, Mason brings one unspecified cause of action, titled "Cause of Action No. 1." (Compl. ¶¶ 36–52.) He seeks unspecified damages in excess of $75,000 to compensate him for medical treatment, pain and suffering, loss of earning capacity, "[p]ermanent anatomical impairment," and loss of enjoyment of life. (*Id.* ¶¶ 3, 50.) Ardagh filed an Answer. (Doc. No. 11.)

Keurig filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 16) and an accompanying Memorandum (Doc. No. 17), to which the plaintiff filed a Response (Doc. No. 22). Keurig did not file a reply brief. Separately, Ardagh filed a Motion for Judgment on the Pleadings (Doc. No. 20), under Rule 12(c), and an accompanying Memorandum (Doc. No. 21), to which the plaintiff filed a Response (Doc. No. 23), and in further support of which Ardagh filed a Reply (Doc. No. 24).

## III. LEGAL STANDARDS – RULES 12(b)(6) & 12(c)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (omission in *Twombly*). While Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The standards of review for Rule 12(b)(6) and Rule 12(c) motions are the same. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)). A Rule 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which

relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). But a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). In ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Eastep v. City of Nash.*, 156 F.4th 819, 826 (6th Cir. 2025) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 517 (6th Cir. 2016)), *cert. denied sub nom. Eastep v. Carrick*, 146 S. Ct. 1816 (2026).

## IV. DISCUSSION

### A. Jurisdiction and Governing Law

The plaintiff invokes this court's diversity jurisdiction under 28 U.S.C. § 1332. (Compl. ¶ 3.) The court has jurisdiction over this case because the amount-in-controversy requirement has been met, the plaintiff is a citizen of Ohio, one defendant is a citizen of Delaware and Texas, and the other defendant is a citizen of an unspecified foreign country.[3] (Compl. at 1, ¶¶ 1, 3.) Courts sitting in diversity apply state substantive law. *Berk v. Choy*, 607 U.S. 187, 192 (2026) (citing 28 U.S.C. § 1652). As the parties agree, Tennessee law applies.

[3] No party has filed a "Rule 7.1(a)(2) Disclosure Statement," required of every party in diversity cases. L.R. 7.02(b). And neither defendant has filed a "Business Entity Disclosure Statement," required of business entities in every case. L.R. 7.02(a); *see also* Doc. No. 4 (Notice Regarding Business Entity Disclosure Statement). The parties will be ordered to comply with the Local Rules.

### B. The Tennessee Products Liability Act

While the Complaint does not recite the statute, in briefing, all parties construe its sole claim as brought under the Tennessee Products Liability Act ("TPLA"), Tenn. Code Ann. § 29-28-101, *et seq.*, which sets forth the statutory scheme "for all claims arising from injuries alleged to have been caused by products" and "supersede[s] common law claims for personal injuries stemming from alleged defects in products or failures to warn of the dangers associated with a product." *Coffman v. Armstrong Int'l, Inc.*, 615 S.W.3d 888, 895 (Tenn. 2021) (citing Tenn. Code Ann. § 29-28-102(6)).

To state a claim under the TPLA, a plaintiff must allege facts from which the court can reasonably infer that: "(1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000)). The TPLA defines the term "defective condition" as "a condition of a product that renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code. Ann. § 29-28-102(2). And a product is "unreasonably dangerous" if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." *Id.* § 29-28-102(8). In sum, to succeed on a TPLA claim, a "plaintiff must show that there was something wrong with the product[] and trace the plaintiff's injury to the specific defect." *Spencer v. Clorox Servs. Co.*, No. 2:22-cv-02510-TLP-CGC, 2023 WL 11891452, at *3 (W.D. Tenn. May 3, 2023) (quoting *King*, 37 S.W.3d at 435).

### C. Analysis

Because the defendants make similar arguments and their respective motions are adjudicated under the same standard, for the most part the court will consider their arguments together. The defendants do not contend that the plaintiff fails to allege that his injury was caused by the exploding soda can, so the court will focus on the first and second elements of a TPLA claim, which, in this case, overlap. In addition, the defendants argue that the plaintiff has failed to comply with a further requirement of the TPLA, which the court will address first.

#### *1. Failure to Comply with Tenn. Code Ann. § 29-28-107*

The Complaint does not comply with the TPLA's requirement to "state an amount . . . sought to be recovered from any defendant." Tenn. Code Ann. § 29-28-107. That is, Mason does not specify the amount of the damages he seeks, other than to allege that they suffice for diversity jurisdiction. (Compl. ¶ 3.) The defendants briefly argue, with nearly identical language citing no authority, that the plaintiff has thereby failed to state a claim and the case should be dismissed. (Doc. No. 17 at 10; Doc. No. 21 at 7.) In response, the plaintiff cites an opinion by this court for the proposition that such a failure constitutes a "minor shortcoming" that does not justify dismissal. (Doc. No. 22 at 8 (quoting *Jones v. Walgreen Co.*, No. 3:05-cv-0735, 2005 WL 8175476, at *2 (M.D. Tenn. Nov. 30, 2005); Doc. No. 23 at 8 (same).) Indeed, the plaintiff's failure in this regard, which can be swiftly cured by amendment, "certainly does not justify dismissal of the case." *Jones*, 2005 WL 8175476, at *2. The plaintiff will be ordered to comply with § 29-28-107 by amending the Complaint. Such amendment, which will be strictly limited to specifying an amount of damages, will not permit or require additional Rule 12(b)(6) motions.

### 2. *Defective or Unreasonably Dangerous When the product Left the Control of the Manufacturers*

To state a claim under the TPLA, the plaintiff must plead facts from which the court can infer that the product was "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." Tenn. Code Ann. § 29-28-105(a). A product is "defective" if it is "unsafe for normal or anticipatable handling and consumption." *Id.* § 29-28-102(2). The TPLA expressly precludes manufacturer liability when the product was "made unreasonably dangerous by subsequent unforeseeable alteration, change, improper maintenance or abnormal use." *Id.* § 29-28-108.

The defendants argue that the plaintiff does not allege that the soda can was "defective for normal or anticipated handling or consumption" because his injury did not occur "during the expected use of the product." (Doc. No. 17 at 6; Doc. No. 21 at 5 (same).) Instead, the defendants argue, the Complaint at most alleges that the soda can "became unreasonably dangerous after Plaintiff froze the can overnight." (Doc. No. 17 at 10; Doc. No. 21 at 6 (same).) That is, the defendants argue that the Complaint does not allege that the soda can was "defective," under the TPLA, because the plaintiff "does not argue that freezing the can is a normal or anticipated use." (Doc. No. 17 at 8; *see also* Doc. No. 21 at 5 ("Plaintiff never alleges any facts showing that freezing pressurized soda cans is a normal or foreseeable use. Moreover, Plaintiff admits that he and his mother knew the cans should not be frozen." (citing Compl. ¶¶ 11–14)).)[4]

Further, the defendants argue that, if the soda can was ever dangerous, it only *became* dangerous when the plaintiff froze it. As for the plaintiff's allegation that the can was "defective

---

[4] Ardagh misconstrues the Complaint's allegation that Mason decided to remove a frozen can of soda from the mini-fridge as an admission that he knew that cans of soda should not be frozen.

when it left the possession and control of Defendants Ardagh . . . and Keurig," (Compl. ¶ 47), the defendants argue that this allegation is "conclusory." (Doc. No. 17 at 8 (citing Compl. ¶ 47; Doc. No. 21 at 5 (same).) And in any case, the defendants argue, Mason "cannot allege the product was unreasonably dangerous at the time of manufacture, or the time of sale," because he "alleges he travelled cross-country with the product, for at least three days without issue." (Doc. No. 17 at 9–10 (citing Compl. ¶¶ 4–6); Doc. No. 21 at 6 (same).) The court construes this latter argument to be that products cannot have latent defects, which neither defendant supports.

In their opening briefs, the defendants each cite precisely one product liability case concerning a motion to dismiss: *Maness v. Boston Scientific*, 751 F. Supp. 2d 962 (E.D. Tenn. 2010). (Doc. No. 17 at 7; Doc. No. 21 at 4; *accord* Doc. No. 24 at 2 ("*Maness* squarely governs here.").) In *Maness*, the plaintiff alleged that, after having a medical device used to treat back pain implanted, she suffered pain and an infection and had the device removed. 51 F. Supp. 2d at 964–65. She sued several defendants, including the device's manufacturers. *Id.* at 965. The court found that the plaintiff had failed to state a TPLA claim. *Id.* at 969–70. Other than alleging her injuries, the court found, the plaintiff made only conclusory allegations that the device was defective or unreasonably dangerous, including, for example, that the "defective medical device . . . was not fit for the purpose intended and was defective and therefore caused the plaintiff harm." *Id.* at 969 (quoting the Complaint).

Similarly, in *Tilden v. General Electric Company*, cited by the plaintiff, part of an MRI machine broke and fractured the plaintiff's decedent's arm. No. 3:11-cv-628, 2012 WL 1023617, at *1 (E.D. Tenn. Mar. 26, 2012). As alleged, the decedent died "as result of illness and the fracture to his forearm." *Id.* The plaintiff alleged that the machine was in an "inoperable defective condition" and was "unsafe and unreasonably dangerous." *Id.* at *4. The court found for the

defendants, in part because the plaintiff had "not alleged any facts about how the MRI machine was allegedly defective or unreasonably dangerous," but rather merely "assert[ed] that it was so." *Id.* (citing *Twombly*, 550 U.S. at 555 n.3).

In response, the plaintiff analogizes to several cases that distinguished *Maness* and denied motions to dismiss TPLA claims. (Doc. No. 22 at 3–6; Doc. No. 23 at 3–6.) In *Kelley v. Howard Berger Company*, for example, the plaintiff's decedent was killed in a fire. No. 13-96-DLB-HBG, 2013 WL 4014748, at *1 (E.D. Tenn. Aug. 6, 2013). The plaintiff—the decedent's son—brought a TPLA claim against the supplier of oxygen tanks and related medical devices his father used to help him breathe. The plaintiff alleged that the devices leaked oxygen, which "caused, contributed to, or intensified the fire that killed the Decedent." *Id.* In response, the defendant argued that the plaintiff had failed to state a claim because "he has not identified a specific defect or design flaw in the equipment it supplied to the decedent," and that the plaintiff "merely asserts in conclusory fashion that the equipment was defective and/or unreasonably dangerous, and that the decedent was subsequently harmed." *Id.* at 2. The court distinguished *Maness*, where the plaintiff "alleged no facts demonstrating that the device caused her injuries" and "had failed to offer any facts from which the court could infer that the device was defective or unreasonably dangerous." *Id.* By contrast, in *Kelley*, the plaintiff "specifically allege[d] that the equipment supplied by Defendant was defective or unreasonably dangerous because it leaked oxygen and because Defendant failed to outfit the equipment with proper safety mechanisms." *Id.* at *3 (internal quotation marks omitted). The court explained, "[u]nlike the plaintiff in *Maness*, therefore, Plaintiff identifies a specific product defect." *Id.*

In *Cash-Darling v. Recycling Equipment, Inc.*, also cited by the plaintiff, the plaintiff's decedent died in a fire caused by an aluminum dust explosion at a recycling facility, where he

worked. No. 2:19-cv-00034-DCLC, 2020 WL 12846745, at *1 (E.D. Tenn. Aug. 19, 2020). The plaintiff alleged that a shredding machine, which the defendant manufactured, should have had a dust collection system, which would have prevented the explosion. *Id.* The defendant argued that, because "shredding machines do not always require a dust collection system . . . the product did not become 'defective' as Plaintiff alleges until [the recycling facility] received the product and began using it." *Id.* at *3. The court distinguished *Maness*:

> The instant case is more similar to *Kelley* than *Maness.* Rather than merely alleging the shredding machine caused the explosion that killed the Decedent and was therefore defective, Plaintiff specifically alleges that the shredding machine created combustible dust that led to an explosion because the product lacked a dust collection system, resulting in the Decedent's death. Plaintiff identifies a particular defect of lacking either a dust collection system or an adequate warning of the potential for a combustible dust explosion. Plaintiff has further alleged these defects were present at the time the shredding machine left Defendant's control and that they proximately caused the Decedent's death. Therefore, Plaintiff has sufficiently stated a claim under the TPLA.

*Id.* at *4.

Mason argues that this case is more like *Kelley* and *Cash-Darling* than *Maness* and *Tilden*. (Doc. No. 22 at 4–6; Doc. No. 23 at 4–6.) He argues that he has stated a claim for relief because the Complaint specifies a defect (the "improperly formed double seam"), a "specific component" (the top of the can), and he alleges that the defect existed when it left the defendants' control. (Doc. No. 22 at 6–7; Doc. No. 23 at 6–7.) Ardagh responds that, as in *Maness*, and unlike in *Cash-Darling* and *Kelley*, the plaintiff "identifies no manufacturing deviation, process failure, or defect[ive] condition." (Doc. No. 24 at 3; *see also id.* ("Plaintiff alleges no facts explaining how the seam was defective, how it deviated from specifications, or how it rendered the can unreasonably dangerous when it left Ardagh's control.").) Moreover, Ardagh argues, *Cash-Darling* and *Kelley* "reinforce . . . rather than undermine" its argument. (*Id.* at 1.)

The court agrees that this case is more similar to *Kelley* and *Cash-Darling* than *Maness* and *Tilden*. The plaintiff has not merely stated that the exploding ginger ale can caused his injury and therefore was defective. Rather, Mason alleges that a can of soda exploded in his face. He specifically alleges that the can's double seam was defective, that this defect existed when the product left the defendants' control, and that it proximately caused his injuries.

In addition, the plaintiff argues that the defendants' characterization that he pleads abnormal use misconstrues the Complaint. (Doc. No. 22 at 7–8; Doc. No. 23 at 7–8.) Ardagh replies that "[f]reezing a sealed, carbonated beverage is not normal use." (Doc. No. 24 at 4.) It argues that a "product is not 'unreasonably dangerous' when the risk arises from a condition the consumer knowingly creates and controls." (*Id.* at 5 (citing, generally, *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882 (W.D. Tenn. 1999)). But *Greene* concerned the plaintiff's husband's death from lung cancer, which the plaintiff attributed to her husband's smoking cigarettes manufactured by the defendants. 72 F. Supp. 2d at 885. There, the court took judicial notice of the "fact that, at all times relevant to this lawsuit, consumers were generally aware that cigarette smoking poses serious health risks." *Id.* at 890 (footnote omitted). This court cannot take similar judicial notice regarding the risks associated with freezing cans of soda; nor do the defendants ask it to. But even if the court were to accept the defendants' contention that freezing cans of soda constitutes abnormal use, the Complaint, construed in the light most favorable to the plaintiff, does not allege that Mason froze the can of ginger ale. Rather, the Complaint alleges that Mason placed the soda can in a mini-fridge that, unbeknownst to him, was too cold. Putting soda in a hotel mini-fridge does not constitute abnormal use.

Separately, Ardagh argues that, even if the plaintiff had properly pleaded that the can's double seam had been misapplied, this would have happened "after the subject can left Ardagh's

possession and control." (Doc. No. 21 at 6.) The plaintiff does not respond to Ardagh's two-sentence argument on this point, which is not without some merit. Indeed, the Complaint alleges that, *after* Keurig bought the can from Ardagh, Keurig filled the can with liquid and procured the top from a third-party, which it "stamped onto [the] aluminum can and fixed with a double seam." (Compl. ¶¶ 26, 29–31.) At Keurig's facility, a "gamma ray scanner should [have] inspect[ed]" the can "for proper sealing." (*Id.* ¶ 32.) The plaintiff broadly alleges that his injury "was the fault of Ardagh and Keurig . . . in producing and manufacturing a soda can with a defective double seam that was not caught and removed." (*Id.* ¶ 45.) As alleged, any failure to *identify* a faulty double seam would have been Keurig's. But, as the court has described, the Complaint does not clarify how the double seam was defective—whether through its application or because of a defect in the top or can itself, which might have prevented proper application of a double seam. Drawing all reasonable inferences in the plaintiff's favor, the court will not dismiss the action against Ardagh merely because, when the can left its control, no double seam had been applied.

## V. CONCLUSION

For the foregoing reasons, Keurig's Motion to Dismiss (Doc. No. 16) and Ardagh's Motion for Judgment on the Pleadings (Doc. No. 20) will be denied. The plaintiff will be granted leave to amend the Complaint solely to comply with Tenn. Code Ann. § 29-28-107. The filing of the Amended Complaint, so limited, will not license further Rule 12(b)(6) motions.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge